IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Zurich American Insurance Company, | C.A. NO.: 3: 06-561-CMC |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| Sumter Hotel Group Limited Partnership, | |
| Defendant. | |

This declaratory judgment action is before the court on motion of Plaintiff, Zurich American Insurance Company ("Zurich"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Specifically, Zurich seeks a determination that damages allegedly suffered by Defendant, Sumter Hotel Group Limited Partnership ("Sumter"), are not covered under a Commercial General Liability ("CGL") policy issued by Zurich to CBU Enterprises ("CBU"). For the reasons set forth below, the motion is granted.

**STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn

therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## BACKGROUND

This declaratory judgment action follows a separate legal action brought by Sumter against CBU (the "Sumter-CBU" litigation) to recover damages for a defective paint job. The paint was applied by CBU to the roof of a hotel owned by Sumter. Defects in the work, evidenced by blistering and peeling of the paint, became apparent within months after completion of the job.

Sumter brought suit against CBU when the parties could not reach agreement as to how to remedy the defects. While CBU did not challenge the need for repair, it maintained that the problems could be remedied by stripping the old paint and repainting. Sumter, on the other hand, maintained that it would be necessary to replace the roof to obtain the originally intended appearance because adequate stripping of the defective paint to achieve the desired surface would damage the underlying metal roof.

Zurich provided CBU a defense in the Sumter-CBU action but did so under a reservation of its rights to challenge coverage. The action was, ultimately, settled based on CBU's confession of

judgment in the amount of $185,000 and agreement to pay $10,000 of that amount. In exchange, Sumter agreed to: (1) accept an assignment of CBU's rights under its CGL policy with Zurich; and (2) enter into a Covenant Not To Execute against CBU beyond the agreed payment of $10,000.

By separate agreement, Zurich consented to the CBU-Sumter settlement "for the purpose of establishing [the] amount of damages only and no other purposes." Zurich-Sumter Agreement ¶ 1. The Zurich-Sumter agreement expressly stated that Zurich did "not waive its right to challenge coverage" of the claims and that it was "not waiving or giving up any position it has about the damages being covered under the policy." Zurich-Sumter Agreement ¶¶ 2 & 6. This declaratory judgment action followed.

## SUMMARY OF ARGUMENTS

Zurich asserts that it is entitled to judgment as a matter of law because Sumter's alleged injuries constitute only a defect in CBU's work which has caused no injury to other property. Thus, Zurich argues that there has been no "occurrence" or "accident" within the scope of the CGL policy. These arguments rest on the factual premise that the defective paint job has not caused injury to the underlying roof. Zurich also maintains that coverage is excluded under the "Your Work" exclusion of the policy.

Sumter responds that the cost of replacing the roof should be covered under the policy because it will be necessary to replace the roof to correct the appearance problems with the defective paint job. That is, Sumter argues that replacement of the roof is necessary to obtain an aesthetically pleasing appearance in the final product.[1] Sumter also argues that leaving the roof in its current

---

[1] For present purposes, the court accepts Sumter's position that the paint cannot be stripped and reapplied in such a way that the resulting roof will have the aesthetically pleasing appearance originally intended without posing a risk of damage to the underlying metal substrate. There is, on the other hand, no evidence that the roof cannot be repaired from a purely functional standpoint by removal and reapplication of the paint.

3

condition will lead to premature deterioration because the current paint is blistering and peeling. Sumter asserts that these current defects in the paint and related risks of future injury to the roof itself, are sufficient to establish that it has suffered an injury to property other than the contractor's work product.[2]

### RELEVANT POLICY PROVISIONS

The policy issued by Zurich to CBU is a standard Commercial General Liability ("CGL") policy. The following terms are pertinent to the motion for summary judgment:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.
>
> * * *
>
> b. This insurance applies to . . . "property damage" only if (1) the . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and] (2) . . . occurs during the policy period.

* * *

2. Exclusions

* * *

> Damage to Your Work. "Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

---

[2] In its Statement of Facts, Sumter asserts that Zurich is estopped from challenging coverage in light of the agreements entered in the underlying CBU-Sumter litigation. Sumter does not, however, advance this position in any of its legal arguments. The estoppel argument is, in any event, foreclosed by the plain language of the written Zurich-Sumter Agreement. It is also foreclosed by Sumter's failure to assert an estoppel or waiver defense in its answer. *See* Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively … estoppel [and] … waiver, and any other matter constituting an avoidance or affirmative defense." ).

4

\* \* \*

SECTION V - DEFINITIONS:

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

## DISCUSSION

**I.    Zurich's CGL policy does not provide coverage for CBU's defective workmanship unless the defects caused injury to "other property."**

Under South Carolina law, claims against contractors for faulty workmanship are not covered by CGL insurance policies unless the faulty workmanship causes injury to property other than the work of the contractor. *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33 (S.C. 2005) (adopting majority rule). This is because faulty workmanship alone does not constitute an "occurrence."[3]

In *L-J*, the court held that there was no "occurrence" where the damage at issue was to the contractor's work product which involved installation of a roadway. *Id.* (finding no coverage for defects in road construction evidenced by alligator cracking and other deterioration). The court summarized its reasoning as follows:

> We find these negligent acts constitute faulty workmanship, which damaged the roadway system only. And because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions, we hold that the damage in this case did not constitute an occurrence.

---

[3] The definition of "occurrence" at issue in this action is identical to the language construed and applied in *L-J*.

5

*L-J*, 621 S.E.2d at 36. The court distinguished such non-covered damages from damage to the work product caused by the actions of a third party and from damage to other property caused by defects in the work product. *Id.* (noting that to hold otherwise would be to treat a "CGL policy more like a performance bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents").

In various earlier decisions, the South Carolina Supreme Court and Court of Appeals reached similar results, albeit based on different rationales. For instance, in *Century Indemn. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355, 357 (S.C. 2002), the South Carolina Supreme Court held that the "your work" exclusion in a CGL policy precluded coverage for faulty workmanship, explaining its decision based on general considerations as to the intent of such policies:

> A comprehensive general liability policy, such as the one at issue, provides coverage, for all the legal liability encountered by a business entity, with coverage excluded for certain specific risks. . . . This type of insurance is not intended to insure business risks, *i.e.*, risks that are the normal, frequent or predictable consequences of doing business, and which business management can and should control or manage. . . . Specifically, the policies do not insure an insured's work itself, but rather, they generally insure consequential risks that stem from that work.

*Century*, 561 S.E.2d at 358 (internal punctuation and citations omitted).

Other decisions have found coverage lacking where the injured party would be limited to a contract claim against the contractor through application of the state's economic loss rule. For example, in *Auto-Owners Ins. Co. v. Carl Brazell Bldrs., Inc.*, 588 S.E.2d 112 (S.C. 2003), the South Carolina Supreme Court found that there was no coverage under a CGL policy where the plaintiffs in the underlying action did "not allege any physical injury to their property, but solely economic damages, particularly the diminished value of their property, as a result of Contractor's knowing sale of homes located on property containing hazardous materials." *Id.,* 588 S.E.2d at 115.

6

Similarly, in *C.D. Walters Constr. Co., Inc. v. Fireman's Ins. Co. of Newark*, 316 S.E.2d 709, 711 (S.C. App. 1984), the court held that damage to land caused by improper clearing and grading work were not covered under a CGL policy where the injury was only to "that particular part of [the landowner's] property . . .upon which operations [were] being performed" by the insured contractor. The court reasoned as follows:

> The risk intended to be insured [under a CGL policy] is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. . . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for *economic loss because the product or completed work is not that for which the damaged person bargained*.

*Walters*, 316 S.E.2d at 712. *See also Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 320 (S.C. App. 1994) (finding duty to defend applied in action for negligent failure to detect termite infestation where subsequent physical damage to property resulted from that failure, but acknowledging that CGL policies are "not intended to provide coverage for the insured's contractual liability which causes economic loss") *aff'd*, 468 S.E.2d 304 (S.C. 1996) (affirming on reasoning of the Court of Appeals).[4]

## II.     There is no evidence that an injury to other property has yet occurred.

The injury which Sumter has suffered to-date consists of a defective paint job evidenced by blistering and peeling of the defectively applied paint. These injuries are merely defects in the work product (the paint job itself), caused by defective workmanship. They cannot, therefore, constitute an "occurrence" under South Carolina law absent proof of some resulting damage to other property.

---

[4] *Century Indemn., C.D.Walters, and Isle of Palms* are cited in the *L-J* decision as cases addressing non-coverage of faulty workmanship under a CGL policy based on theories other than the lack of an "occurrence."

*See, e.g.*, *L-J,* 621 S.E.2d at 36 (holding that damage by road construction contractor "to the roadway system only" was not an occurrence "because faulty workmanship is not something that is typically caused by an accident or by exposure to the same general harmful conditions").

Sumter concedes that damages to or defects in the contractor's own work are not covered because the policy covers only "property damage–caused by the *insured–to adjacent property outside the scope of the contractor's work*." Dkt No. 26 at 5 (emphasis added). *See also id.* at 7 (noting that "[t]he proper analysis distinguishes between the presence of faulty work and the impact of said faulty work on *other property*"– emphasis added). Sumter contends, nonetheless, that the injury here is covered because the continued worsening of the blistering and peeling "is evidence of continuous or repeated exposure [of the underlying roof] to the harmful conditions as defined in the policy" and the "only repair option . . . is replacement of the roof itself." *Id*. at 7.

Accepting the first statement as true, that the blistering and peeling of the paint continues to worsen, and assuming that this is evidence that the underlying roof is being or will be exposed to harmful conditions is not, however, enough. This is because the blistering and peeling is merely evidence of defective workmanship that *could cause* damage to other property. It is not, alone, evidence of an "occurrence" which is defined "an accident, *including* continuous or repeated exposure to substantially the same general harmful conditions." Assuming without deciding that the exposure to the elements caused by a defective paint job might constitute an "accident" under this definition, it remains that the "accident" does not trigger coverage until it results in "property damage" which is defined to require "[*p]hysical injury* to tangible property, including all resulting loss of use of that property." *See generally Century Indemn.,* 561 S.E.2d at 357 (noting that South Carolina applies the "modified continuing trigger theory" which commences coverage whenever the

damage can be shown to have first occurred).[5]

Sumter's argument can be compared to that of a homeowner who contracts for replacement of a roof and receives a defective product. If the roof collapses or otherwise fails within the policy period, and if that failure results in injury to property other than the roof itself, a covered "occurrence" will likely exist. The mere fact that the roof is deteriorating faster that it should due to improper installation, and the fact that this poses an increased risk of harm to other property would not, however, constitute "property damage" under language such as that in the CGL policy at issue. Rather, it is merely the type diminution in value or economic loss excluded from coverage under the line of South Carolina cases preceding *L-J*. *See, e.g., Century Indemn.*, 561 S.E.2d at 357-59 (finding faulty workmanship exclusion precluded claim for cost to repair defectively applied stucco even if repair of that surface required replacement of the properly installed substrate); *C.D. Walters Constr.*, *Auto Owners*, and *Isle of Palms*, (all discussed *supra* at 6-7).

Other courts have reached a similar conclusion where the defects at issue involve delivery of a defective product which poses a risk of harm, but does not actually result in harm during the policy period. For instance, in *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 498-99 & 504 (Ill. 2001), the Illinois Supreme Court distinguished between damage caused by leaks in a defective plumbing system and defective plumbing systems which merely posed an increased risk of such damage as a result of premature deterioration. The court found coverage to exist under a CGL policy in the first instance (actual water damage) and not in the latter (risk of water damage). This was because the "physical injury" requirement was triggered at the time the water damage occurred, not when the defective system was installed.

---

[5] The date when any injury to "other property" first occurred is more than a mere formality here as the policy at issue is no longer in effect.

Similarly, in *United States Fire Insurance Co. v. Meridian of Palm Beach Condominium Association Inc.*, the Florida Court of Appeals found no coverage for unspecified design and construction defects, offering the following analogy:

> When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case.

*United States Fire Insurance Co. v.Meridian of Palm Beach Condominium Association Inc.*, 700 So.2d 161, 162 (Fla. App. 1997). Similarly here, unless and until the defective paint causes actual injury to other property, there is no coverage.

### III.     Coverage is excluded by the "Your Work" exception.

Because the damages suffered to date extend only to the defective paint job itself, they are also excluded under the "Your Work" exclusion. *See generally* 9A Couch on Ins. § 129:17 (3d ed. 2006) ("where all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the 'your work' exclusion will apply to the preclude coverage").

### CONCLUSION

In summary, to the extent Sumter's complaint is that it has received a defective paint job which continues to deteriorate, its claim is simply one for defective workmanship or delivery of a product of less value than that for which it contracted. There is no coverage for this injury because it does not constitute an "occurrence" or damage to "other property." Such injuries are also excluded under the "Your Work" exclusion. To the extent Sumter complains that the paint job cannot be corrected to the quality originally intended without risking damage to other property, its

10

claim also fails because it is, in essence, a claim for diminished value of the final product. Finally, to the extent Sumter alleges injury *may occur* in the future due to the defect (if not repaired or as a result of attempted repairs), its claim is not covered because the policy has expired prior to the events which might trigger coverage.

The motion for summary judgment is, therefore, granted in full. The Clerk of Court is directed to enter judgment in Plaintiff's favor, declaring an absence of coverage under the terms of the CGL policy at issue in this action.

**IT IS SO ORDERED**.

                                                    s/ Cameron McGowan Currie
                                                    CAMERON MCGOWAN CURRIE
                                                    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 19, 2007